IN THE MATTER OF R. DALE COOK, ATTORNEY AT LAW.

No. 3993

July 9, 1957 313 P.2d 434

*R. Dale Cook,* applicant, in pro. per.

*Clarence Sundeen,* attorney for Board of Governors of the State Bar.

## OPINION

*Per Curiam:*

The local administrative committee of Clark County, Nevada, served on R. Dale Cook, the applicant above-named, its complaint alleging professional misconduct in several counts. We need consider but one of them as hereinafter discussed. Hearings were had upon the complaint on February 25, March 1, 7 and 22, 1956, before the local administrative committee, district No. 1, Clark County, Nevada, and some eight witnesses were sworn and testified, including the accused. Some sixteen exhibits were received in evidence without objection. The administrative committee consisting of the chairman and seven additional members made unanimous findings. These are lengthy and drawn with great formality, but may be condensed to reflect the following situation.

Cook was and had been acting as attorney for one Norman Khoury who desired to borrow $35,000 on Clark County real estate. Khoury was at the time in Cleveland, Ohio. Cook prepared a form of general power of attorney from Khoury to himself, signed it "Norman Khoury" in a disguised hand, placed an acknowledgment

form upon the instrument and caused it to be delivered to an employee of Clark County Mortgage Company (of which company Cook acted as attorney) for the purpose of having a notary public execute the acknowledgment certificate purporting to show that Norman Khoury had personally appeared before the notary and executed and acknowledged such written power of attorney. This was accomplished through the acknowledgment certificate of another person connected with said mortgage company. This was all done with the intent and purpose that the instrument, the signature of Khoury, the certificate of acknowledgment of the notary would all be accepted and relied upon as genuine and with the intent that the same be delivered to Pioneer Title Insurance & Trust Company of Las Vegas, Nevada, to the end that such title company would rely thereon as a genuine instrument conferring on Cook the authority therein recited. Cook knew, of course, that the instrument did not in fact confer any power or authority on him, but that it was a false, spurious and forged instrument. He knew also that the notary purporting to take the acknowledgment would in turn be doing so in violation of law. He knew that the title company intended to rely upon the genuineness of the instrument. Cook then proceeded under his purported authority as attorney in fact to execute a deed of trust for the purpose of securing a loan for the sum of $35,000. (Several deeds of trust and notes are involved but we find it unnecessary to go into greater detail.) The Pioneer Title Insurance & Trust Company accepted and relied upon the deed of trust so executed (as it relied on the genuineness of the power of attorney) and upon such reliance issued its policy of title insurance to Joseph Mitry and his wife who were the assignees of the purported deed of trust. This was all pursuant to what Cook intended. The title company thereafter, confronted with the fact that it had insured the title, based on the forged power of attorney and the ineffective deed of trust made good on its policy to the extent of $34,266.66. Prior to the power of attorney in

question, Cook had executed an earlier power of attorney from Khoury to himself in which he himself as a notary public had taken his own acknowledgment. This had been rejected by the insurance company for the irregularity appearing on its face, whereupon Cook executed the second power of attorney above described. On a second assignment of the deed of trust the surety was compelled to pay and did pay the further sum of $17,850 under the liability of its title insurance policy.

Apparently Clark County Mortgage Corporation received the proceeds of the loans. That company in turn was purchasing an airplane from Santa Monica Aviation Company for the use of Fabulous Enterprises, Inc., which apparently used the plane in exhibiting or identifying sundry parcels of land to be sold to prospective purchasers or entrymen. The transaction from this point becomes quite involved. The mortgage company issued two checks, one for $10,000 and one for $11,000 to Cook. Part of this money was to reimburse Cook for a check he in turn had given on the plane. Part apparently was to reimburse him for a $5,000 loan made by him to Khoury (or at least to cover a $5,000 check which Cook had drawn for that purpose). $2,000 was paid to the attorneys for Khoury's corporation in Las Vegas and some $1,500 was paid to reimburse Cook for certain fees and costs in other matters. Otherwise Khoury received no part of the proceeds of the loan. The plane itself was repossessed by Santa Monica Aviation Company and an aggregate of $25,000 paid to that company was apparently entirely lost.

Save that Cook asserted that he had no improper intentions in any of these transactions and save that he maintained that he received no part of the proceeds of the loan accomplished by his unlawful acts and save that he claimed that Khoury in repeated long distance telephone calls from Cleveland urged him to expedite the loan and to do everything necessary, he does not dispute any of the findings reflecting the foregoing recital.

The local administrative committee unanimously

recommended disbarment. On application to the board of governors of the state bar the matter was reviewed by that board in a hearing and proceeding called for the purpose upon the petition of the accused, but Cook, though duly notified, failed to appear.

Thereupon the board of governors proceeded to a consideration of the matter and by unanimous action of its seven members concurred in the disbarment recommendations of the local administrative committee and filed its report with this court likewise recommending disbarment.

It should be noted that other acts of professional misconduct were found by both the local administrative committee and the board of governors. No purpose would be served by a discussion of such additional matters.

No characterization of the unlawful and criminal nature of the accused's actions is necessary. They speak for themselves. When the matter was set for argument before this court upon the report of the board of governors, the accused's application for review, the answer thereto and the reply to said answer, the chairman of the local administrative committee appeared on behalf of the board of governors and the applicant appeared in his own person. Instructed to proceed, he advised the court that he desired to submit his application for review without argument. Counsel for the board then advised the court that there was nothing for him to answer and that he would make no argument. The matter was thereupon ordered submitted. As the findings of the local administrative committee and of the board of governors are amply supported by the evidence and are indeed not denied by the applicant, and as such findings are sufficient to justify and support the recommendation for disbarment, it must be so ordered.

It is accordingly ordered (NRS 7.100, 7.220) that the name of R. Dale Cook be stricken from the roll of attorneys and counselors of this court and that he be precluded and disbarred from practicing as such attorney or counselor in all the courts of this state.